**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

|                                      |     |                                  |
| ------------------------------------ | --- | -------------------------------- |
|                                      | §   |                                  |
| **ROY CASTRO,**                      | §   |                                  |
|                                      | §   |                                  |
| **Plaintiff,**                       | §   |                                  |
|                                      | §   |                                  |
| **vs.**                              | §   | **Civil Action No. 1:06-CV-0176-BI** |
|                                      | §   | **ECF**                          |
|                                      | §   |                                  |
| **MICHAEL J. ASTRUE,**               | §   |                                  |
| **Commissioner of Social Security,** | §   |                                  |
|                                      | §   |                                  |
| **Defendant.**                       | §   |                                  |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed December 22, 2006, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on September 18, 2007, and Defendant filed a brief on October 16, 2007. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on February 15, 2007 (Doc. 9), and June 1, 2007 (Doc. 20). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on April 13, 2004, alleging disability beginning December 13, 2002. Tr. 13-14, 19. Plaintiff's application was denied initially and upon reconsideration. Tr. 13, 27-33, 39-43. Plaintiff filed a Request for Hearing by

Administrative Law Judge on November 26, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on January 19, 2006. Tr. 13, 56-57, 470-94. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 473-84. John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 484-92. The ALJ issued a decision unfavorable to Plaintiff on March 14, 2006. Tr. 10-21.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements through the date of his decision, and Plaintiff had not engaged in substantial gainful activity at any time since December 13, 2002. Tr. 13-14, 19. Plaintiff has "severe" impairments, including diabetes mellitus, peripheral neuropathy, and dizziness. Tr. 15, 19. The ALJ found that Plaintiff's mental impairment, depression, was not "severe." Tr. 14. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 15, 20. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 15.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 17, 20.

The ALJ found that Plaintiff could not return to his past relevant work as a small products assembler and as a vacuum plastic molder/heat form worker. Tr. 18. He noted that Plaintiff was

considered a "younger individual" with a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 18, 20.

The ALJ found that Plaintiff retained the RFC to perform a significant range of light work activity, limited to jobs that do not require: more than occasional stooping, crouching, crawling, kneeling, or climbing stairs and ramps; climbing scaffolds, ladders, and ropes or balancing; sitting for more than 45 minutes at one time without the opportunity to stand in addition to lunch and normal legal breaks during the workday; walking more than one block's distance at one time without the opportunity to sit; standing more than 15 minutes at one time without the opportunity to sit; standing/walking for more than four hours out of an 8-hour workday; more than occasional working above shoulder level with the upper extremities; more than occasional pushing or pulling with the feet; working at unguarded heights or near unguarded hazardous mechanical equipment; or operating a motorized vehicle. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 18-19. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of small products assembler, with 133,000 jobs nationally; office helper, with 194,000 jobs nationally; and storage facility rental clerk, with 188,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 19-20.

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 1, 2006. Tr. 8-9. The Appeals Council denied Plaintiff's request and issued its opinion on August 9, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review,

it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 5-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On December 22, 2006, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 19-20.

## III.  DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to find step 3 that Plaintiff's impairments do meet or equal a listed impairment; failed to properly develop the record regarding Plaintiff's mental impairments; failed to properly consider the limiting effects of all of Plaintiff's impairments in making his RFC assessment; and erred in considering Plaintiff's periodic failure to take medication when he could not afford to do so. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.  Whether the ALJ erred by finding that Plaintiff's impairments do not meet or equal in severity any impairment in the Listing of Impairments.**

Plaintiff argues that the ALJ erred in finding at step 3 of the sequential evaluation process that his impairments did not meet or equal in severity any impairment in the Listing of Impairments. He argues that the medical evidence of record demonstrates that his impairments satisfy or are equivalent to the requirements of Section 4.05 and 4.11 of the Listing of Impairments. In his decision the ALJ found that Plaintiff's impairments did not meet or medically equal, either singly or in combination, any of the impairments listed in Section 4 of the Listing of Impairments. Tr. 15.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that his impairments meet or equal one of the listings in Appendix 1 of 20 C.F.R. Part

404. The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet the listing under § 4.05, dealing with recurrent arrhythmias, the Plaintiff must show that he has:

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope.

20 C.F.R. Pt. 4, Subpt. P, App. 1, § 4.05 (internal citations to other sections omitted). Section 4.01(B)(1) indicates that a longitudinal clinical record covering a period of not less than 3 months of observations and treatment is usually necessary. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 4.01(B)(1). To meet the definition of *recurrent*, the longitudinal clinical record must show that within a consecutive 12-month period the findings(s) have occurred at least three times, with intervening

periods of improvement of sufficient duration which make it clear that separate events are involved. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 4.01 (A)(3)(c). Section 4.05 is applicable when a claimant has arrhythmias that are not fully controlled by medication, an implanted pacemaker, or implanted cardiac defibrillator. 20 C.F.R. Pt. 4, Subpt. P, App. 1, § 4.01 (F)(3)(a). "Near syncope" is defined as a period of altered consciousness and is not merely a feeling of light-headedness, momentary weakness, or dizziness. *Id*. at § 4.01(F)(3)(b). In addition, there must be a documented association between the syncope or near syncope and the recurrent arrhythmia, which must be the cause of the associated symptom and which must be documented. *Id*. at § 4.01(F)(3)(c).

Plaintiff argues that he has meet these criteria, noting that he was admitted to a hospital with a chief complaint of having lost consciousness and syncope three times in the previous week. Tr. 235. Plaintiff's diagnosis was syncope, possibly secondary to arrhythmia. *Id*. Plaintiff's treating physician indicated that he could return to work on December 26, 2002, with restrictions to not operate heavy machinery and to avoid step ladders. Tr. 237. In the course of his workup for this episode, Dr. N. Keith Robinson noted that the differential diagnosis includes hypoglycemic reaction, as Plaintiff was not following his blood sugars closely. Tr. 240. Plaintiff was referred to Udaya S. Swarna, M.D., for a cardiac follow-up. Tr. 243-44. Dr. Swarna opined that Plaintiff's syncope might be orthostatic in nature or perhaps because of coronary artery disease and arrhythmias. Tr. 243. Dr. Swarna opined that Plaintiff should proceed with a tilt-table test. Tr. 275. The tilt-table test was negative for syncope. Tr. 278. Plaintiff underwent a complete electrophysiology study on January 29, 2003. Tr. 276-77. Dr. Swarna indicated that he was not 100% convinced that the syncope was related to a conduction system abnormality as the symptoms were mainly present when Plaintiff stood up from a sitting-down position, and he also noted that baseline findings showed that the Plaintiff would benefit from a pacemaker implantation. Tr. 277. Plaintiff underwent a cardiac catherization on March 17, 2003, after complaining of chest pain and syncope. Tr. 281-82. Dr.

Swarna's conclusions were normal coronary arteries, mild left ventricular hypokinesis. Tr. 281. He opined that Plaintiff's chest pain was non-cardiac. *Id*. Debbie Wasson, PAC, noted on May 12, 2003, that Plaintiff had reported no further syncopal episodes. Tr. 288. Plaintiff reported occasional dizziness when he stands but did not want a pacemaker and wanted to return to work. Tr. 288. Plaintiff was counseled regarding the need to diet and exercise and lose weight, and he was advised to take a baby aspirin daily. Tr. 289.

A discharge summary for February 19, 2005, indicates that Plaintiff was discharged from Hendrick Medical Center after being admitted complaining of recurrent syncopal episodes on the day of admission. Tr. 403. Plaintiff was noted to be slightly orthostatic. *Id*. It was noted that Plaintiff had uncontrolled diabetes due to not taking his medication for over a year. *Id*. Some darkened areas on his lower extremities were noted where he had previously had ulcers on his legs. *Id*. The final diagnosis was syncope due to incomplete heart block, status post dual chamber pacemaker; uncontrolled diabetes secondary to being off medications for over a year, and some evidence of peripheral neuropathy and diabetic retinopathy. Tr. 403-04. Plaintiff had reported some intermittent syncope. Tr. 405. After admission, Plaintiff was told that he needed a permanent pacemaker and was advised not to drive or operate any dangerous machinery equipment until he corrects this problem. Tr. 409. A dual-chamber pacemaker was placed. Tr. 410. A progress note dated March 4, 2005, indicates that Plaintiff was not pacemaker dependent, the pacemaker was functioning normally, and no problems or complaints were noted. Tr. 412. On April 15, 2005, Plaintiff complained of weakness at times but denied any further syncopal episodes. Tr. 444. Plaintiff reported on November 9, 2005, that he felt weak and dizzy like he was going to pass out. Tr. 462. Plaintiff testified that he feels dizzy and lightheaded but does not pass out. Tr. 475.

The record does not contain evidence to meet each criteria of Listing § 4.05 during the relevant period. The record does not indicate that within a consecutive 12-month period, Plaintiff

experienced near syncope, which is *not* merely a feeling of light-headedness, weakness, or dizziness, at least three times, with intervening periods of improvement of sufficient duration which make it clear that separate events are involved. 20 C.F.R. Pt. 4, Subpt. P, App. 1, §§ 4.01 (A)(3), 4.01(F)(3)(a)-(b), 4.05. While Plaintiff reported that he was dizzy and felt weak after the implantation of his pacemaker and while he reported several syncope episodes prior to his application date, there is not substantial evidence in the record to meet *each* of the appropriate criteria of the Listing.

Indeed, the ALJ noted Plaintiff's reports of syncope episodes and extensively discussed the evidence of record about the objective testing related to Plaintiff's report of syncope episodes, dizzy spells, and complaints of weakness. Tr. 15-16. While Plaintiff argues that he continues to experience near syncope episodes, he bears the burden of showing that his impairment or combination of impairments meets or equals a Listing at step 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(d); *Selder*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521). Plaintiff also argues that his impairment is of sufficient medical severity to constitute medical equivalence. He must provide medical findings that support each of the criteria for the equivalent impairment determination. The evidence does not indicate that he experienced near syncope episodes, as defined in the Listings, which were recurrent and which had the necessary documented association between the symptoms and the arrhythmias.

Plaintiff also alleges that he has met or equaled the criteria of Section 4.11 of the Listing of Impairments, dealing with chronic venous insufficiency. 20. C.F.R. Pt. 404, Subpt. P, App. 1, § 4.11. This listing requires "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system" with "[e]xtensive brawny edema" or "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." *Id*. Plaintiff notes that he has a long

history of venous status ulcers and has statis dermatitis.  He further argues that if he has not consistently met the criteria of § 4.11 because his ulcers periodically improve, he may have met the criteria for at least 12 months and may have equaled the criteria of this Listing.

The record demonstrates that a progress note dated February 22, 2000, indicates that Plaintiff reported that he has recurrent skin leg ulcers but noted that no active legal ulcers were seen.  Tr. 319-20.  Plaintiff was advised to stop alcohol use and smoking.  Tr. 320.  An arterial dopscan of the lower extremities was essentially normal, with no evidence of any arterial occlusive disease.  Tr. 324.  Plaintiff's pre-onset date records indicate that he has a long history of venous stasis ulceration, although on February 14, 2000, it was noted that his ulcers were healed.  Tr. 365.  On September 26, 2000, Plaintiff was noted to be asymptomatic with healed ulcers.  Tr. 373.  Plaintiff was noted to have ulcers to the medial aspect of the distal tibia bilaterally that were "well scabbed over with no active infection" on December 3, 2002.  Tr. 305.  A February 17, 2005, progress note indicates that Plaintiff had some dark areas on his legs where he has had ulcers.  Tr. 406.  No ulcerations were noted on May 10, 2005.  Tr. 430.

The record contains no evidence indicating that Plaintiff experienced superficial varicosities, statis dermatitis and recurrent ulceration, or persistent ulceration that did not heal following at least 3 months of prescribed treatment during the relevant period.  Clearly, Plaintiff has a history of ulceration.  However, despite the reports of his history of ulceration, Plaintiff's medical evidence indicates no periods of active ulceration that was either recurrent or persistent as defined in the Listings for a period of at least 12 months during the relevant period.  Therefore, the ALJ's determination that Plaintiff's impairments did not meet or equal any impairment in the Listing of Impairments, including Listing 4.11, is supported by substantial evidence.

Having carefully considered Plaintiff's contentions, the ALJ's opinion, and the evidence of record, it is clear that Plaintiff failed to carry his burden at step 3 to show that he met or equaled  the

criteria of the appropriate section(s) of the Listing of Impairments. The court finds that the ALJ did not err in finding that Plaintiff's impairments did not meet or equal in severity any section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

**B.    Whether the ALJ erred by failing to properly develop the record of Plaintiff's mental impairments and by finding that Plaintiff's mental impairments were "not severe."**

The ALJ found that Plaintiff's mental impairments were not severe. Tr. 14. Plaintiff argues that the ALJ erred in finding at step 2 that his mental impairments were not severe and erred by failing to fully and fairly develop the record regarding his mental impairments.

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone v. Heckler* the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984).

In *Loza* the Court held that the standard set forth in *Stone* remained the correct standard. 219 F.3d 378 at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992). Thus, in the Fifth Circuit, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work to meet the severity threshold.

On March 7, 2005, Plaintiff's care provider indicated that Plaintiff reported that he was depressed with occasional lack of initiative. Tr. 440. A progress note dated March 10, 2005, indicates that Plaintiff was "slightly dysthymic." A progress note dated May 23, 2005, indicates that Plaintiff reported depression, anxiety, and insomnia and was prescribed Wellbutrin. Tr. 428-29. Plaintiff's Wellbutrin was again noted on June 20, 2005. Tr. 456-57. An August 22, 2005, progress note indicates that Plaintiff reported being depressed and anxious. Tr. 454. However, on October 4, 2005, his provider indicated that his psychological health was within normal limits. Tr. 452. Additional progress notes indicate that Plaintiff was "slightly dysphoric" and "appropriate." Tr. 456-58, 469. Plaintiff testified that he sometimes does not remember things. Tr. 482. He testified that he did not start getting depressed until sometime in 2005. Tr. 483.

Plaintiff argues that once the ALJ was given notice of his mental impairments, he had a duty to order a consultative examination, to further develop the record, to consider the degree to which Plaintiff's symptoms were affected by his mental impairments, and to incorporate limitations based on such impairments into the RFC assessment.

Clearly, the ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quoting *Newton*, 209 F.3d at 458). The claimant has the burden to prove that he is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). The court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)). In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). This court will not reverse for a failure to develop the record unless Plaintiff can show that he was prejudiced as a result.

Under some circumstances, a consultative examination is required to develop a full and fair record. 20 C.F.R. § 404.1517. The decision to require such an examination is discretionary. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). A consultative examination for additional testing is required when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on a Social Security disability claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). "Isolated comments by a claimant are insufficient, without further support, to raise a suspicion of non-exertional impairment." *Brock*, 84 F.3d at 728.

A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986). The ALJ's duty to investigate "does not extend to possible disabilities that are not

alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

In this case the record indicates that Plaintiff was treated for depression from March 2005. The record indicates that Plaintiff was prescribed Wellbutrin and his depression improved over the course of several months. The record contains no information suggesting that Plaintiff's subjective complaints were due to his mental impairments. The ME testified that the record indicated that Plaintiff's depression improved with his medication, and the ALJ correctly noted that the record indicated that Plaintiff's depression improved with medication. Moreover, the ALJ correctly noted that Plaintiff did not testify that he was unable to work because of depression. The ALJ appropriately evaluated the degree to which Plaintiff's depression affected his activities and abilities, finding that Plaintiff was not restricted in his ability of daily living; was mildly restricted in his social functioning; has mild deficiencies in concentration, persistence or pace; and has had no episodes of decompensation. This evaluation is consistent with Plaintiff's testimony, the evidence of record, and the reports of his activities and symptoms.

Plaintiff points to *Latham v. Shalala*, arguing that the ALJ erred by failing to consider the possibility that his subjective symptoms might result from his mental condition. *See* 36 F.3d 482, 484 (5th Cir. 1994). In *Latham* the Fifth Circuit noted that "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." *Id.* (citing 20 C.F.R. § 404.1529(b)). However, in *Latham* the ALJ had "dismissed many of [the claimant's] complaints of pain and severe discomfort when he decided that [the claimant's] physical ailments were not serious." *Id.* There was also evidence in the record that the claimant had been diagnosed with a somatization disorder, a basic feature of which are physical symptoms for which there are no demonstrable organic findings. *Id.* (citing 20 C.F.R. Subpt. P,

App. 1, § 12.07). In this case the ALJ noted Plaintiff's impairment and his non-compliance with his prescribed treatment and his diabetic diet, and his failure to maintain his diabetic logs. The ALJ found that Plaintiff's testimony was partially credible. He specifically questioned Plaintiff about his mental impairments at the hearing.

The court finds that the ALJ did not err by failing to consider or develop the record regarding any mental impairment and that Plaintiff has failed to demonstrate any prejudice from the alleged failure to develop the record. The ALJ's determination that Plaintiff's mental impairment was not "severe" and did not have more than a minimal affect on his ability to perform basic work activities, as well as his determination of the limitations imposed by such impairments, is supported by substantial evidence of record, including the medical evidence of Plaintiff's mental impairments, his treatment and progress reports, the testimony of the ME, and Plaintiff's own testimony. In addition, the record contains no information indicating that Plaintiff's subjective symptoms were affected by his mental impairment, nor was the ALJ's duty to obtain a consultative examination or further develop the record triggered by the evidence regarding Plaintiff's mental impairment. The court, therefore, finds that the ALJ did not err in finding that Plaintiff's mental impairment(s) were not severe, did not err by failing to order a consultative examination to fully and fairly develop the record, and did not err by failing to incorporate any limitations imposed by such impairment(s) into the RFC assessment.

**C. Whether the ALJ erred in making his RFC assessment by failing to properly consider the limitations imposed by all of Plaintiff's impairments.**

Plaintiff argues that the RFC assessment is not supported by substantial evidence because the ALJ failed to consider the effects of all of Plaintiff's impairments; failed to incorporate any limitations based on Plaintiff's diabetic retinopathy, dizziness or syncope; and was internally inconsistent.

-15-

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam*, 782 F.2d at 1286.

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity to be the basis for eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

The ALJ found that Plaintiff's severe impairments include diabetes mellitus, peripheral neuropathy, and dizziness. Tr. 14. The ALJ noted Plaintiff's history of syncope and diabetes mellitus. Tr. 15-16. He noted that there were few medical records concerning Plaintiff's diabetes, although the extant records indicate chronic noncompliance, uncontrolled blood sugar, and intermittent dizziness. Tr. 16. The ALJ noted Plaintiff's testimony that he was diagnosed with peripheral neuropathy in his legs and feet and a little in his hands and that he has no feeling in his toes. *Id.* He noted Plaintiff's testimony of swelling in his lower legs, being able to walk for 30 minutes and sit for 45 minutes, and elevating his legs at night. *Id.*

The ALJ noted that the ME testified that Plaintiff has some neuropathy with no motor or kidney problems, the main issues being numbness and diminished sensation in the lower extremities. Tr. 16.

The ALJ found that Plaintiff retained the RFC to perform a range of light work activity, but such ability was limited to jobs not requiring him to stoop, crouch, crawl, kneel, or climb stairs and ramps more than occasionally; to climb scaffolds, ladders, and ropes or balance; to sit more than 45 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal work breaks during the workday; to walk more than one block's distance at one time without the opportunity to sit; to stand more than 15 minutes at a time without the opportunity to sit; to stand/walk for more than 4 hours during an 8-hour workday; to work above shoulder level with the upper extremities more than occasionally; to push or pull with the feet more than occasionally; to work at unguarded heights or near unguarded hazardous mechanical equipment; or to operate a motor vehicle. Tr. 17-18.

First, the court notes that the ALJ *did not* find that Plaintiff can only sit for 45 minutes of an hour; rather, he found that Plaintiff can sit no more than 45 minutes without the opportunity to stand (i.e., Plaintiff could choose to briefly stand after sitting for up to 45 minutes). The ALJ similarly did not find that Plaintiff can only stand for 15 minutes per hour; rather, he found that after standing for a period of 15 minutes, Plaintiff may need to sit. Plaintiff's argument on this issue demonstrates a misunderstanding of the RFC assessment. For example, the Plaintiff could choose to sit for 45 minutes, stand for 5 minutes, sit for 30 minutes, stand for one minute, etc. The RFC finding is not internally inconsistent.

Second, while Plaintiff argues that the ALJ erred in finding that his apparent warning of syncope allows him to perform the requirements of light level work, the ALJ actually found that the record demonstrates that Plaintiff has not experienced syncope since the implantation of his pacemaker. Tr. 17. The ALJ did not accept the ME's testimony regarding a limitation imposed by Plaintiff's dizziness. The ALJ correctly noted Plaintiff's testimony indicating that when he felt dizzy, he would sit down or kneel on one knee. Plaintiff argues that the ALJ "misunderstood his testimony." Pl. Brief at 11-12. However, the ALJ did not accept Plaintiff's testimony indicating that he was passing out without any notice or symptoms. Tr. 17. The limitations he incorporated into the RFC assessment reflect his credibility finding and reflect the evidence of record regarding Plaintiff's complaints of dizziness.

Plaintiff also argues that the ALJ erred by failing to include a limitation in the RFC finding to reflect his diabetic retinopathy. On December 3, 2002, Plaintiff reported a sensation of pressure behind the left eye and a vague left eye visual disturbance. Tr. 304. Plaintiff reported some problems with vision in the right eye. Tr. 406. While the record clearly indicates that Plaintiff has complained of vision issues prior to and following his application date, the record contains no evidence indicating that Plaintiff's ability to perform work activity was affected by his eye

complaints.  Therefore, the ALJ did not err by failing to include any limitations based on Plaintiff's possible diabetic retinopathy.

The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  The ALJ's RFC determination reflects his credibility determination and is not internally inconsistent. The ALJ did not err by failing to include limitations in the RFC assessment which were not supported by the record, and the RFC assessment is supported by substantial evidence in the record.

**D.**     **Whether the ALJ erred by considering Plaintiff's failure to comply with prescribed treatment for his diabetes mellitus, where there is evidence in the record indicating that Plaintiff was unable to afford his medication or supplies.**

Plaintiff also argues that the ALJ erred by considering his periodic noncompliance with medication, given his inability to afford the same.

The record indicates that Plaintiff has adult onset diabetes present for many years without follow-up or compliance.  Tr. 304.  Plaintiff's physician noted that Plaintiff has "[d]iabetes mellitus with horrible compliance in the last few years."  Tr. 305.  On March 3, 2005, Plaintiff was again noted to have uncontrolled diabetes mellitus secondary to being off his medications for over a year. Tr. 404.

Clearly, a claimant's failure to follow prescribed treatment may be considered in making a credibility determination.  *See* Soc. Sec. Ruling 96-7p (July 2, 1996) ("SSR 96-7p"); *see also, Villa v. Bowen,* 894 F.2d 1019, 1024 (5th Cir. 1990).  A financial inability to testimony or comply with treatment should also be considered.  *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1997).

In his opinion the ALJ noted Plaintiff's history of noncompliance, as well as his testimony that he cannot afford his medication. Tr. 17. The ALJ found that Plaintiff's testimony was partially credible in light of the evidence. The record indicates that the ALJ considered Plaintiff's testimony that he was unable to afford his diabetes medication. While the ALJ noted that there may be organizations and charities that could provide care for individuals who cannot afford it, the ALJ did not find that Plaintiff was entirely not credible, nor did he base his decision on Plaintiff's failure to comply with treatment for his diabetes mellitus. The ALJ noted the medical evidence and Plaintiff's testimony that he considered in making his credibility determination. The ALJ did not indicate that his decision was based on Plaintiff's failure to treat a condition that can be reasonably remedied by treatment. The ALJ did not ignore Plaintiff's diabetes as a malady that may be remedied by medication, nor did he find that any of Plaintiff's impairments were *per se* remediable. The instant matter is distinguishable from *Lovelace*.

The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's testimony of being unable to afford his diabetes medications, in making his credibility determination. The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988); *Jones*, 829 F.2d at 527. The ALJ did not err in considering the evidence of record in making his credibility determination, which is supported by substantial evidence in the record, and did not err in noting Plaintiff's noncompliance with prescribed treatment for his diabetes mellitus in making his credibility determination.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ did not err, that the ALJ's opinion and the RFC determination are supported by

substantial evidence in the record, that the Commissioners's decision should be affirmed, and that Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed December 22, 2006, is **DISMISSED WITH PREJUDICE**.

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 29th day of September,

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**